**ALLSTATE INSURANCE COMPANY,**
Appellant,

v.

Charlie SCOTT, Appellee.

No. 6356.

Court of Civil Appeals of Texas,
El Paso.

May 22, 1974.

Rehearing Denied June 12, 1974.

Stubbeman, McRae, Sealy, Laughlin & Browder, Harrell Feldt, Rodney W. Satterwhite, Midland, for appellant.

Childs & Bishop, Jerry P. Childs, Eric Augesen, Odessa, for appellee.

OPINION

WARD, Justice.

This is a workmen's compensation case. The problem: Was Charlie Scott an employee of the insured, Sam Fitzhugh Water Well Service, at the time he received his injuries or was he an independent contractor? The trial Court entered judgment in accordance with the verdict of the jury that he was an employee and that he was totally and permanently disabled. The insurance carrier for Fitzhugh now insists by a variety of points that there was no evidence or insufficient evidence to support the employee finding and that the finding was so against the overwhelming weight and preponderance of the evidence as to be clearly and manifestly wrong. We affirm.

Only the testimony of Charlie Scott is available to answer the problem. He stated he was 47 years old, had a fourth grade education, and after working in the oil fields had gone into ranch work. In addition to this, in 1968, he started working part-time on his own as a windmill repairman and had acquired the necessary tools together with a truck with a winch and gin pole or boom. In the fall of 1971, his regular job was supervising several employees on a ranch which was located south of Midland. On Wednesday evening, December 1, 1971, Sam Fitzhugh called Scott at his home in Midland and asked that he help him out on a job which Fitzhugh had on a ranch in Pecos County. Fitzhugh was in the windmill repairing business, had his own equipment, and operated as the Sam Fitzhugh Water Well Service. He had contracted with rancher Bob Johnson to repair one of his windmills for the contract price of $175.00 but had run into trouble as the pole on his truck was not tall enough to be able to lift the mill off of the tower and put it on the ground where

the repair work could be done. Fitzhugh wanted Scott to bring his truck which had a taller pole to help him on Thursday. Scott could not go on Thursday as he had his own work at his ranch to be arranged but did agree to meet Fitzhugh at Rankin on Friday and they could then go together to the Bob Johnson ranch, which was located 31 miles south of Sheffield in Pecos County. He did meet Fitzhugh at Rankin at 8:00 A.M. on Friday and they drove in Scott's truck to Sheffield, where they had lunch, and then to the Bob Johnson ranch and the windmill site, where they arrived at about 1:00 P.M. On the way to the ranch, they met the ranch owner, Bob Johnson, and Fitzhugh talked to him about the job. Scott did not talk to or meet Bob Johnson. Fitzhugh already had his truck at the site and the pole on that truck was already raised. After Scott and Fitzhugh discussed how to get the mill off of the tower, Scott raised his pole, climbed the windmill and attached his line to the mill. He then climbed back down to obtain more tools. At this point, the wind came up and Fitzhugh suggested that the line on the Fitzhugh pole be attached to the mill as an added precaution because of the blowing wind. This was done by Scott, and after he had unbolted the mill from the tower, the two men then by operating their two winches lowered the mill to the ground. Scott let some slack on his line and it was then that the boom on the Fitzhugh truck fell and struck Scott and caused his injuries. The two men had contemplated that when they got the mill on the ground that the two of them would repair it and that they would continue working until the mill was repaired and in place before they stopped. There was further testimony that Scott was paid $10.00 an hour by Fitzhugh and that after the accident Fitzhugh did send him $80.00 for the eight hours he spent, including the time driving from Midland and the time on the job. Scott always took care of his own social security and income tax withholding payments and paid his own car insurance and his oil and gas and truck expenses.

In considering the "no evidence" points, we shall consider the evidence and the inference therefrom most favorable to the verdict and if evidence of probative value exists, which tends to show that Scott was an employee of Fitzhugh, then the verdict must be upheld. The recognized test which is used to determine if one is an employee is with respect to the right of control as to the details of the employment being in the one alleged to be the employer. To solve this we first must look to the terms of the employment contract and in doing this we encounter a common situation and find that the terms of this contract are oral and indefinite. With this we can then look to what the parties did and see if any exercise of control was used by the alleged employer. The rule is established that in cases where there is no express contract, or where the terms of the employment are indefinite, the exercise of control, while evidentiary only and not the true test, is the best evidence available in determining the right of control. Newspapers, Inc. v. Love, 380 S.W.2d 582, 590 (Tex.Sup.1964); Halliburton v. Texas Indemnity Ins. Co., 147 Tex. 133, 213 S.W.2d 677, 680 (1948); Stimson v. Aetna Insurance Company, 440 S.W.2d 108 (Tex.Civ. App.—Dallas 1969, no writ). Here at the windmill job site the two men discussed how to get the mill off of the tower, and Scott testified that he did what he was told. Scott then climbed the tower while Fitzhugh remained on the ground and watched Scott perform the work. When the wind came up, Fitzhugh suggested that the line of his truck be attached by Scott to the mill as an added precaution. While this was the strongest evidence of exercise of control exhibited at the scene, it is sufficient under the facts of this case, as the accident occurred soon after and all work was stopped. This actual exercise of control as to this detail of the work by Fitzhugh and Scott's acquiescence therein almost at the time of the accident is evidentiary enough of Fitzhugh's right to control. Swift v. Aetna Casualty and Surety Company, 449 S.W.2d 818, 821 (Tex.Civ.App. —Houston (14th Dist.) 1970, no writ).

Additionally, we find that the work that was being performed by Scott was a part of the regular business of the Sam Fitzhugh Water Well Service, and for this Scott was to be paid for his time spent and was not to be paid by the job. Finally, the evidence is presented that when Scott did agree to take the job, he then had no freedom as to the hours of his actual work as the men were going to stay until the job was completed. These additional facts support the finding. Restatement of Agency 2d, Sec. 220. It has even been stated that in the absence of evidence showing a different relationship between the parties, the fact that the alleged servant was performing services, peculiar to the principal's business or affairs, establishes prima facie the relationship of master and servant. Newspapers, Inc. v. Love, supra, 380 S.W. 2d p. 591. Regardless of the prima facie aspect, the "no evidence" points are overruled.

Admittedly, some of the factors present do tend to favor the independent contractor relationship. The work done by Scott did require some special skill, he did furnish his own tools and equipment, he was doing only the one particular job, and he did take care of his own social security and income tax payments and other expenses. Anchor Casualty Company v. Hartsfield, 390 S.W.2d 469 (Tex.Sup. 1965). The opinion in the Hartsfield case makes the significant distinction from the present facts when it emphasizes that there was no evidence of the exercise by Wolff of any control over the details of Hartsfield's work. Undoubtedly, the Hartsfield principles would control if Scott were claiming that he was employed by the rancher Bob Johnson, but not when he claims as an employee of Sam Fitzhugh Water Well Service. Goodnight v. Zurich Insurance Company, 416 S.W.2d 626 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.). The difference as illustrated by the

Goodnight case is noted in Stimson v. Aetna Insurance Company, supra, 440 S.W.2d at p. 111. The jury's finding of the employer-employee relationship was supported by sufficient evidence and was not so against the weight of the evidence as to be clearly wrong.

The judgment of the trial Court is affirmed.